```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,

    v.                                          No. 16-30520

CHRISTOPHER C. FINKLEY,

            Defendant.
    _____/

                              SENTENCING

         BEFORE MAGISTRATE JUDGE ELIZABETH A. STAFFORD
                    United States Magistrate Judge
              Theodore Levin United States Courthouse
                    231 West Lafayette Boulevard
                          Detroit, Michigan
                       Tuesday, March 28, 2017
                              2:08 p.m.

APPEARANCES:

    For the Plaintiff:          AMANDA JAWAD
                                U.S. Attorney's Office
                                211 West Fort Street
                                Suite 2001
                                Detroit, Michigan  48226
                                (313) 226-9116


    For the Defendant:          COLLEEN P. FITZHARRIS
                                JAMES GEROMETTA
                                Federal Defender Office
                                613 Abbott Street
                                Fifth Floor
                                Detroit, Michigan  48226
                                (313) 967-5866


      Transcribed by Leann S. Lizza, CSR-3746, RPR, CRR, RMR, CRC

          (Transcript produced from digital voice recording.
             Transcriber not present at live proceedings.)
```

**TABLE OF CONTENTS**

| | Page |
|---|---|
| Sentencing | 3 |

Exhibits:                                                    Received

(None offered.)

**SENTENCING** 3

1              March 28, 2017
2              Detroit, Michigan
3                    - - -
4         THE COURT CLERK: All rise. The United States
5    District Court for the Eastern District of Michigan is now in
6    session. The Honorable Elizabeth A. Stafford, United States
7    Magistrate Judge, now presiding. You may be seated.
8         The Court calls Ticket Number 6077979, *United States*
9    *of America versus Christopher C. Finkley.*
10        Counsels, please place your appearances on the record.
11        MS. JAWAD: Good afternoon, Your Honor. Amanda Jawad
12   on behalf of the United States.
13        THE COURT: Good afternoon.
14        MS. JAWAD: Good afternoon.
15        MS. FITZHARRIS: Good afternoon. Colleen Fitzharris
16   for Mr. Finkley.
17        THE COURT: Good afternoon.
18        Mr. Gerometta, are you here in an official capacity
19   or...
20        MR. GEROMETTA: I am officially here, Your Honor
21   [inaudible].
22        THE COURT: Okay. So will you say your name for the
23   record then?
24        MR. GEROMETTA: Yes, Your Honor. James Gerometta,
25   Federal Defender [inaudible].

1       THE COURT: Thank you. You may be seated.
2       Have the parties received a copy of the presentence
3  investigation report?
4       MS. JAWAD: Yes, Your Honor.
5       MS. FITZHARRIS: Yes, Your Honor.
6       THE COURT: I didn't receive any objections. Nobody
7  has any objections to the report; is that correct?
8       MS. JAWAD: That's correct from the government.
9       MS. FITZHARRIS: That's correct, Your Honor. There's
10 [inaudible].
11      THE COURT: Okay. And everybody agrees that for
12 Count 1, simple assault, inappropriate touching under 18 U.S.C.
13 113(a)(5), the maximum sentence is six months in prison and a
14 $5 million -- I'm sorry, a $5,000 fine; is that correct?
15      [Inaudible].
16      THE COURT: And everybody agrees that there are no
17 sentencing guidelines that will apply to this case?
18      [Inaudible].
19      THE COURT: And that the Court may impose up to five
20 years of probation and up to one year of supervised release.
21 Does everyone agree to that?
22      MS. JAWAD: Yes [inaudible].
23      THE COURT: All right. Miss Jawad, I understand that
24 the victim wishes to be heard?
25      MS. JAWAD: Yes, Your Honor.

**SENTENCING** 5

1       THE COURT:  Will you please have her come up to the
2   podium, please.
3       Please state your name for the record.
4       MS. COSTIAN:  Rhonda Costian [phonetic].
5       THE COURT:  Do the parties wish for her to be under
6   oath?
7       MS. JAWAD:  We do not, Your Honor.
8       MS. FITZHARRIS:  No, no.
9       THE COURT:  All right.  Thank you.
10      All right.  You may proceed.
11      MS. COSTIAN:  My name is Rhonda Costian.  I was the
12  victim on July 27th on the 2016 Delta flight.  It will forever
13  impact my life.  I never imagined something like that could
14  happen on an airplane.  After the Defendant was allowed to sit
15  next to me while waiting for the bathroom to become available,
16  he was -- the Defendant was sitting in first class.  He was
17  staring at me.  I had sunglasses on.  He put his hands on my
18  upper thigh and began rubbing them.  I asked him to stop.  He
19  didn't.  Then he put his finger inside the bottom of my shorts,
20  rubbed the inside of my shorts.  At that point I asked him
21  please stop.  My children were in -- were seated two rows
22  behind me.  He said they wouldn't know.
23      I immediately looked for help.  There was no
24  attendants around or anybody around to put him back in his
25  first class seat.  I couldn't move after the pilot announced we

1   were landing.  There was nowhere to go or nowhere did I know if
2   my daughter had seen or if anybody else had seen.  The flight
3   attendant had seen I was crying and apologized when she had
4   thought he was with me.
5           I can't tell you the impact it will leave on my life
6   as it was scary being in the air with nowhere to go and
7   defenseless.  Travel will not be the same for me or my family.
8   The fear of travel on an airplane is now part of my life.
9           Hopefully counseling and therapy will help me and my
10  family work through the anxiety over travel, as we do travel a
11  lot for my daughter's cheer and pom competitions.  I hope and
12  pray that Defendant isn't allowed to fly on a plane or anything
13  in public, for that matter.  No one should have to be fearful
14  to fly as I am.
15          I did not realize the impact it had on me until I had
16  to fly the recent flight.  I had to take medication.  My heart
17  was racing.  I was unable to rest comfortably.  I hope this
18  helps any other woman, child.
19          There has to be a better way to handle these issues
20  when you're in an aircraft.  I was definitely failed as a
21  person, a customer, defenseless woman.
22          I also ask -- I'd also ask that the Defendant pay for
23  my own lost wages from my jobs and the days missed and any
24  out-of-pocket expenses I will incur, medical bills or lost
25  work.

1       THE COURT: Thank you.
2       MS. COSTIAN: Thank you.
3       THE COURT: Neither party addressed restitution in
4  your memoranda. I guess, Miss Jawad, you want to speak to
5  that?
6       MS. JAWAD: Your Honor, I wasn't aware previously that
7  there would be a claim for restitution. We believe that
8  [inaudible] interested in receiving lost wages for the
9  [inaudible].
10      THE COURT: Do you have an understanding of how much
11 in restitution she believed she was entitled to?
12      MS. JAWAD: May I have one moment?
13      THE COURT: Yes, please.
14   (Short pause.)
15      MS. JAWAD: Your Honor, the victim believes she would
16 have made $400 working two different jobs.
17      THE COURT: Will you look at paragraph 40 of the
18 presentence investigation report on page 9. It says that the
19 probation department is not aware of any demand for
20 restitution. The probation department submitted victim impact
21 documents to the victim; however, response has not been
22 received. Pursuant to 18 U.S.C. Section 3664(d)(5), if the
23 victim's losses are not ascertainable by the date that is ten
24 days prior to the sentencing, the attorney for the government
25 or the probation officer shall so inform the Court and the

1   Court shall set a date for a final determination of the
2   victim's losses not to exceed 90 days after sentencing.
3          Officer Grewe, will you please place your appearance
4   on the record?
5          [Inaudible].
6          THE COURT: Because -- is it your understanding that
7   because no victim impact statement was submitted prior to today
8   or ten days prior to the sentencing, is that something that I
9   can -- still can consider? Do you have an understanding of
10  that?
11         MS. GREWE: Yes, we did receive [inaudible] prior to
12  this hearing, but because she is requesting [inaudible]. Like
13  if there is appearance [inaudible] restitution from today's
14  [inaudible].
15         THE COURT: Uh-huh. Okay. Thank you.
16         Miss Fitzharris, do you want to speak to that?
17         MS. FITZHARRIS: Yes, Your Honor. Mr. Finkley, will
18  pay $400 [inaudible]. And we will agree to that, and we hope
19  that that [inaudible] part of the sentence.
20         THE COURT: All right. Thank you.
21         MS. FITZHARRIS: [Inaudible].
22         THE COURT: All right. Miss Jawad, I have read your
23  sentencing memorandum. Are there any other arguments that you
24  want to make? And if so, please come up to the podium.
25         MS. JAWAD: When we ride on an airplane, we place our

1  trust in the airline.  We place our trust in the pilot.  But we
2  also place our trust in the other passengers.  We trust that
3  the other passengers who are sitting sometimes only a few
4  inches away from us will follow the unwritten rules of common
5  decency, that they will act appropriately and that they will
6  act in a way that will not cause us harm.  The Defendant did
7  not abide by those rules on the day that he boarded that
8  flight.  As Your Honor heard from the victim's statement, he
9  caused her lasting harm that will stay with her for years and
10 certainly every time she flies.
11         The Defendant thought it was appropriate to expose
12 himself and rub himself in plain view of the flight attendants.
13 He then went to a seat he was not supposed to be in an area
14 that he was not supposed to be in and began to touch the
15 victim.  He rubbed her leg after she asked him to stop and put
16 his hand in her shorts.  This happened in the middle of a
17 flight which meant the victim had no access to law enforcement,
18 she couldn't call the police, she couldn't run away or leave
19 the situation.  She just had to sit there as a man rubbed her
20 thigh only a few rows up from where her children were seated.
21         And when the Defendant came to court to answer for
22 this charge, rather than taking responsibility for what he did,
23 he told this court that his zipper was broken and that he was
24 not wearing underwear.
25         The government does understand that Defendant was

1  facing difficult times at the time of the flight and at the
2  time of the court hearing, but many people have family
3  problems, many people drink alcohol and many people experience
4  illness of a loved one.  These are not acceptable reasons to
5  cause harm to others on an airplane.  The public deserves to
6  know that you do not get to rub a woman's bare thigh and put
7  your hand in her shorts on a plane and then come to court and
8  lie about it.
9         With airplane crimes becoming more and more common, a
10 message needs to be sent to the public that if you go to jail
11 and if you behave this way -- that you will go to jail if you
12 behave this way.
13        The $500 fine the Defendant is requesting would be
14 little more than a slap on the wrist.  The government requested
15 30 days of jail time in our memorandum, sentencing memorandum,
16 but we do understand that the Defendant is taking
17 responsibility and paying restitution to the victim.  We still
18 believe that a jail sentence is necessary here, but in the
19 court's discretion, if you feel a jail sentence less than 30
20 days is appropriate, the most important thing to the government
21 is that he does receive a jail sentence for this grossly
22 inappropriate and harmful behavior.  Thank you.
23        THE COURT:  Thank you.
24        Miss Fitzharris.
25        MS. FITZHARRIS:  And [inaudible].

1     THE COURT: And, Mr. Finkley, why don't you join your
2  counsel because after she's done, I'm going to ask for you
3  to -- or give you the opportunity to speak on your own behalf.
4     MS. FITZHARRIS: Mr. Finkley knows that his behavior
5  on July 27th was inappropriate. He blames himself. He accepts
6  responsibility and he's here today to accept this Court's
7  punishment and to apologize for his behavior.
8     I want to address very quickly the charge that he
9  lodged to the Court. The Court remembers on that day, on that
10 day when Mr. Finkley was very emotional, this is his first ever
11 court appearance in his entire life and he had just experienced
12 the loss of his father. When the Court asked about
13 masturbation, it felt an important distinction to draw. I
14 understand the nuance line between touching and masturbation,
15 but that's all I really want to say about this matter.
16    Mr. Finkley takes this charge, this conviction, these
17 two convictions for indecent exposure and simple assault very
18 seriously. He has twice come to Michigan where he doesn't have
19 any ties, paid for those flights, taken time off of work and
20 taken time away from his family. He paid the other ticket in
21 full and accepted responsibility for that immediately. This
22 prosecution has impacted him tremendously and he will speak
23 about that later. He thinks about July 27th every single day.
24 He thinks about the harm he's caused, the pain he's caused to
25 Miss Costian and to the flight crew and to his family. He is

1    incredibly embarrassed about what happened and ashamed of what
2    he's done.
3            As a result of this, all of this, he's done a lot of
4    soul searching and reflection on what he needs to do to insure
5    this doesn't happen again.  He has gone for an alcohol
6    assessment.  He wasn't able to make some follow-up appointments
7    because of his job, but he has met with clergy, he started
8    going to church more regularly, and he's really reflected on
9    alcohol and how it impacts him and tried to abstain from
10   drinking.
11           This -- that day, July 7th -- 27th, was an unusual day
12   in Mr. Finkley's life.  He's lived 44 years of his life without
13   committing any criminal offenses at all.  Since July 27th he
14   has not had any additional criminal contacts or engaged in any
15   further criminal conduct.  It was an aberration, a blip on an
16   otherwise law abiding life and a deeply -- a horrible one that
17   he recognizes.  He knows now that he now has two convictions
18   for his conduct.
19           He prided himself on his crime-free record, and he has
20   to answer for that.  And he has.  He has accepted
21   responsibility by offering to pay restitution.  He's had to
22   look at his children in the face and explain to them what's
23   going on.  He's had to have very difficult conversations with
24   his wife.  It has been a very painful process, but he
25   understands the pain he feels pales in comparison to the pain

1 he's caused.

2 I do not believe a term of imprisonment is necessary
3 for Mr. Finkley. If we look at the reasons to impose a
4 sentence, retribution, deterrence, rehabilitation,
5 incapacitation, I think all of those reasons to incarcerate are
6 lacking.

7 Retribution, he has certainly been punished. I think
8 any fine or term of probation, our probation department
9 believes it's necessary, will be punishment for him.
10 Deterrence, he will not do this again, and he will talk about
11 that. He did not do this before and he has not since. He is
12 trying to take appropriate steps to insure that none of this
13 happens again.

14 Incapacitation, again, I think his record or lack
15 thereof indicates that he's not somebody who needs to be taken
16 away from the public. There are numerous studies. The
17 Sentencing Commission just issued a report talking about the
18 risk of recidivism and they found that people with no criminal
19 history or limited criminal history have a very low recidivism
20 rate.

21 Mr. Finkley -- this experience with the criminal
22 justice system has certainly sent a message, and so a fine and
23 a term of probation or -- that the probation department
24 recommends and any services probation thinks are necessary is
25 the sentence that is appropriate, sufficient but not greater

1   than necessary to achieve the purposes of sentencing.

2           Thank you.

3           THE COURT:  Thank you.

4           Mr. Finkley, this is your time to be heard.

5           THE DEFENDANT:  I want to say, first of all, to the

6   judge, ma'am, I'm so sorry.  I'm so sorry that I did that.  I

7   beg for you to forgive me.  Beg for forgiveness.  So sorry,

8   Judge, ma'am back there, to the public.  This will never happen

9   again.  It's just been -- you know, so to my wife, my children,

10  I'm sorry.  I'm so sorry.  Not a bad person, and I take

11  responsibility for what I did that day and...

12          THE COURT:  Is there anything else, Mr. Finkley?

13          THE DEFENDANT:  No, ma'am.  Thank you.

14          THE COURT:  All right.  You may be seated.

15          As everyone has agreed, there are no sentencing

16  guidelines in this case.  Instead, the only consideration for

17  the sentence here are the factors under Section 3553(a).  Those

18  include the nature and circumstance of the offense.  The nature

19  and the circumstances of the offense were that Mr. Finkley was

20  on a plane, as has been described.  Miss Costian was in the

21  window seat.  He sat in the aisle seat on a plane and began

22  touching her and doing so despite her requests that he stop.

23  This is -- those circumstances would raise fear in most women

24  without the ability to ask for law enforcement help or really

25  any other help.  That would be a situation where, and I'm

1   sure -- I believe Miss Costian felt that she was defenseless
2   under those circumstances.
3           Mr. Finkley is not a small man, and I wouldn't imagine
4   that Miss Costian felt that any effort on her part to
5   physically defend herself would be unsuccessful, that -- I'm --
6   I find her expression of feeling fear and feeling defenseless
7   to be entirely credible and that being -- the anxiety from that
8   experience would have lasting impact.
9           The history and characteristics of Mr. Finkley mostly
10  are a credit to him.  He has been steadily employed as a truck
11  driver since 2007.  He's married and has two children.  He has
12  no history of mental health or emotional health problems.  The
13  one aspect of Mr. Finkley's history that is not helpful to him
14  is his repeated efforts to minimize his conduct on the plane
15  that day.  When he was interviewed by the FBI, he, at first,
16  denied having exposed himself.  When they told him that that --
17  that his statements that were untruthful were a violation of
18  the law, he admitted to his massaging of his penis being taking
19  it to his happy place and but still said he didn't realize that
20  anyone would see it, and that's just contrary to the other
21  witnesses.
22          During the hearing, when Mr. Finkley pleaded guilty,
23  he, again, essentially denied having purposely exposed himself,
24  and that's not the crime that he's charged with here, that he's
25  being sentenced for here.  But I also recall statements that

1  were made that would minimize his assault on Miss Costian.  I
2  remember something to the effect that his hand accidentally
3  went down and touched her thigh.  Nothing indicating that he
4  intentionally rubbed her thigh, that she was asleep initially,
5  that she asked him to stop, that he put his finger under her
6  shorts.  I think that there have been repeated efforts by
7  Mr. Finkley to minimize the extent of his conduct.
8          In terms of the seriousness of the offense and the
9  promotion and the respect for the law and just punishment for
10 the offense and adequate deterrence and protection of the
11 public, I do find this to be a serious crime, I -- it was
12 assaultive.  It created a feeling of fear in Miss Costian.
13 I -- we haven't heard from the personnel who run the plane, but
14 I'm sure that having Mr. Costian -- I'm sorry, Mr. Finkley not
15 only inappropriately touch another passenger but also exposing
16 himself to members of the staff would create a feeling of fear
17 and anxiety among many people who were on the plane.
18         I do believe that Mr. Finkley requires some punishment
19 and that punishment is warranted in order to provide adequate
20 deterrence.  I don't think that a $500 fine and probation is
21 sufficient.
22         The final factor is the need for educational or
23 vocational training, medical care or correctional treatment in
24 the most effective manner, the kinds of sentences available,
25 the need to avoid unwarranted sentencing disparities.  The only

```
 1   issue I think that is relevant from this factor is the need to
 2   provide correctional treatment in the most effective manner,
 3   and that would entail testing and treatment as directed by our
 4   probation officer.
 5              After considering all those factors and considering
 6   the fact that it's not good for anyone especially if
 7   Mr. Finkley has some sort of mental health issues that need to
 8   be addressed for him to be unemployed.  And so I don't want to
 9   issue a sentence that would render Mr. Finkley unemployed.  And
10   for that reason I will sentence him to one week of
11   incarceration.  I agree with the government that a period of
12   incarceration, even if it's a short period, would -- is
13   required in order to, number one, really convince Mr. Finkley
14   that the crimes that he committed were serious, the crime that
15   we're speaking about here which is the simple assault and
16   inappropriate touching, that it is a serious crime.  And I
17   understand Mr. Finkley has no criminal history.  That doesn't
18   give him permission to assault somebody and receive essentially
19   a slap on the wrist as a result.
20              I am going to order that Mr. Finkley serve a period of
21   supervised release for up to a year.  He will be responsible
22   for restitution of $400 to Miss Costian.  I will also impose a
23   fine of $1,000 which is due immediately.  Interest shall not
24   accrue.
25              Mr. Finkley is ordered to pay a special assessment of
```

1   $10 which is due immediately.

2   The mandatory drug testing condition is suspended
3   based upon a determination that he poses a low risk for future
4   substance abuse. I understand that Mr. Finkley attributed his
5   conduct to drinking alcohol, but there is nothing else in his
6   history that reveals that alcohol has caused him to act in an
7   inappropriate manner, and actually I think that his decision to
8   attribute his conduct to alcohol is merely an excuse.

9   While on supervision, Mr. Finkley is ordered to abide
10  by the standard conditions as adopted by the U.S. District
11  Court for the Eastern District of Michigan and he shall comply
12  with the following special conditions: Number one, he shall
13  participate in a program approved by the probation department
14  for mental health counseling, if necessary. He shall not incur
15  any new credit charges or open additional lines of credit
16  without the approval of the probation officer unless the
17  Defendant is in compliance with the payment schedule. And the
18  Defendant shall provide the probation officer access to his
19  requested financial information.

20  Miss Costian, I understand that you requested that
21  Mr. Finkley be prohibited from taking any commercial airplanes.
22  That's not a type of punishment that I really even have the
23  authority to impose even though I do understand your -- the
24  reasoning behind your request for that sort of injunction.

25  I really do hope, Mr. Finkley, that you -- I

```
 1  understand that you're tearful and you're crying and that
 2  you're sorry for the consequences that you are receiving for
 3  your conduct.  I believe that you are sorry, at least to some
 4  extent, for the impact that it had on Miss Costian and other
 5  people on the plane, but due to your statements in which you
 6  attempted to minimize your behavior, it does lead me to
 7  question how much of your regret has to do with the way that
 8  you hurt other people, and I hope that the sentence that I've
 9  imposed, that these statements that Miss Costian made regarding
10  impact that this had on her life, I hope that you will come to
11  terms with the fact that what you did really, really did hurt.
12  Hold on a second.
13       (Short pause.)
14            THE COURT:  I hope that you really will earn the
15  forgiveness that you've requested of Miss Costian.
16            THE DEFENDANT:  I do [inaudible].
17            THE COURT:  Does anyone have any objections that they
18  want to place on the record at this time?
19            MS. JAWAD:  None from the government, Your Honor.
20            THE DEFENDANT:  Please forgive me.  I'm sorry.  Sorry.
21            MS. FITZHARRIS:  No, Your Honor.
22            THE COURT:  Miss Grewe, is there anything else I need
23  to include in the sentence?
24            MS. GREWE:  No, Your Honor, other than the
25  [inaudible].
```

1   THE COURT:  Yes, Mr. Finkley will be able to
2   voluntarily surrender at a location near his home as directed
3   by the Bureau of Prisons.
4         All right.  Miss Costian, I want to thank you for
5   coming in and sharing your experience with the Court, as well
6   as with Mr. Finkley, so that he will, as I said, have an
7   understanding of how his actions had an impact on you.
8         And, Mr. Finkley, I do wish you good luck in the
9   future.
10        THE COURT CLERK:  All rise.  Court is adjourned.
11     (Proceedings concluded, 11:30 a.m.)
12                          -  -  -
13                  **CERTIFICATE OF TRANSCRIBER**
14   I certify that the foregoing is a correct transcription from
15   the official electronic sound recording of the proceedings in
16   the above-entitled matter.
17
18
19  S/Leann S. Lizza                                    6-30-2017
20  Leann S. Lizza                                           Date
21
22
23
24
25